UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ROY ALLEN TURNER,                    §
                                     §
          Petitioner,                §
VS.                                  §        CIVIL ACTION NO. 2:14-CV-470
                                     §
K.  POVNAN, *et al*,                 §
                                     §
          Respondents.               §

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the McConnell Unit in Beeville, Texas.  Proceeding *pro se* and *in forma pauperis*, Petitioner filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on November 24, 2014 (D.E. 1).[1] Petitioner claims that his right to due process was violated in a disciplinary hearing held at the McConnell Unit which resulted in the imposition of punishment.  Respondent filed a motion for summary judgment on February 11, 2015 to which Petitioner responded on February 27, 2014 (D.E. 8, 11).   As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be GRANTED and Petitioner's habeas corpus petition be DENIED.   It is further recommended that a Certificate of Appealability be DENIED.

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mailing system on November 24, 2014 and it is considered filed as of that date.  *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

## JURISDICTION

Jurisdiction and venue are proper in this court because Petitioner is incarcerated in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving a fifty-year sentence for aggravated assault with a deadly weapon (Mot. for Sum. Jmt., Ex. A; D.E. 8-2 at 2). Petitioner does not complain about his holding convictions, but challenges the results of a disciplinary hearing. In disciplinary case number 20150026040, Petitioner was accused and found guilty of failing to obey an order to get a haircut and also failing to comply with grooming standards in that his hair was so long in back that he wore it in a bun (DHR at 2; D.E. 9-2 at).[2]

In the offense report dated September 22, 2014, the charging officer wrote that he had ordered Petitioner numerous times to get his hair cut and Petitioner failed to obey the order. Petitioner refused to comply with grooming standards and wore his hair in a bun (DHR at 6; D.E. 9-2 at 7). During the investigation of the incident, Petitioner stated that he had not been ordered to cut his hair (DHR at 4; D.E. 9-2 at 5).

At the hearing, Petitioner repeated his statement that he had not been ordered to cut his hair. The hearing officer did not call the charging officer to testify because he said that Petitioner failed to present any non-frivolous evidence. It also was noted on the

---

[2] "DHR" refers to the Disciplinary Hearing Record attached to the Respondent's Motion for Summary Judgment (D.E. 9-2). "DGR" refers to the Disciplinary Grievance Record also attached to the motion (D.E. 9-1).

hearing report that Petitioner arrived at the gym for the hearing but left before the hearing began (DHR at 2-3; D.E. 9-2 at 3-4).

Petitioner was found guilty based on the charging officer's report.  He was punished with the loss of forty-five days of commissary, recreation  and telephone privileges, a reduction in line class from L1 to L3 and the loss of fifteen days of good time (DHR at 2; D.E. 9-2 at 3).

Petitioner filed a Step 1 grievance on September 29, 2014, in which he stated that he was in compliance with the grooming standard at the time of the offense and also that he had not been ordered to cut his hair.  Petitioner also said that when he went to the hearing, he was twice told to wait outside for his turn and the second time he took it as a sign that prejudice had formed against him and he was not going to be given a fair hearing.  He also complained that the hearing officer was inexperienced and biased in that he never finds in favor of inmates (DGR at 4-5; D.E. 9-1 at 5-6).  Petitioner received a response telling him that his case had been reviewed and there were no procedural errors.  The hearing officer had determined that there was sufficient evidence to support the guilty verdict and the punishment imposed was within established guidelines (DGR at 5; D.E. 9-1 at 6).

Petitioner filed a Step 2 grievance on October 28, 2014, reiterating that he had been in compliance with the grooming policy and no one had ordered him to cut his hair. He also stated that he attempted to attend his hearing but was turned away twice (DGR at 2-3; D.E. 9-1 at 3-4).  He received a response telling him that there was sufficient evidence to sustain the charge and the finding of guilt, the hearing was conducted in

accordance with policy and there were no due process or procedural errors noted.  The punishment was within appropriate guidelines (DGR at 3; D.E. 9-1 at 4).

In this habeas action, Petitioner asserts the following:  (1) He was denied a full and fair hearing because he was not allowed to attend the hearing through the use of a tactic to keep him out; (2) He was not allowed to give any testimony and photographs were not introduced to show that he was violating the grooming standards; (3) The finding of guilt was not based on the evidence in the record but on retaliation and harassment and (4) The hearing officer abused his authority because if Petitioner had been in violation of the grooming policy he would have been locked up as a security threat.

In his motion for summary judgment, Respondent argues that Petitioner is not eligible for release to mandatory supervision and so cannot make out a claim that his constitutional rights were violated by the loss of good time.  Respondent also argues that none of the other disciplinary measures taken against Petitioner violated his rights.  Respondent concedes that Petitioner's application is timely, exhausted and not second or successive.

In his response, Petitioner repeats his arguments regarding the disciplinary hearing.  He also argues that the reduction in Line Class violated his constitutional rights because it reduces the chance that he will be released on parole.  In addition he alleges that the disciplinary proceeding was brought in retaliation for his having filed a complaint against a captain and also asserts that TDCJ-CID officials did not follow their own policies and procedures with regard to the hearing.

# APPLICABLE LAW

## A.  Due Process Rights

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States.  In *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995), the U.S. Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [*Wolff v. McDonnell*, 418 U.S. 539, 94 (1974)] and [*Meachum v. Fano*, 427 U.S. 215 (1976)].  Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id*. (internal citations omitted).  The Supreme Court held in *Sandin* that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  *Sandin*, 515 U.S. at 486.  The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody.  *Id.* Thus, to the extent Petitioner is claiming that his constitutional rights were violated by the revocation of privileges, he fails to state a claim because the revocation did not

represent an atypical, significant deprivation in which the State of Texas might have created a liberty interest.

### 2. Line Class

Petitioner complains that the reduction in line class violates his right to due process because he has a liberty interest in being released on parole and line class affects parole consideration. However, his argument is foreclosed by Fifth Circuit precedent. Generally, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and in turn, on the amount of time he is in custody. Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995)(*citing Meachum v. Fano*, 427 U.S. 215, 229, n. 8 (1976)). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating). Thus, Petitioner cannot make out a cause of action based on the reduction in line class.

### 2. Loss of Good Time

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and

control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)(citing Tex. Code Crim. P. Ann. art. 42.18 § 2(2)).[3]  Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date.  Tex. Gov't Code Ann. §508.147 (Vernon 2012).  The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time.

Petitioner in this case is precluded from release to mandatory supervision by the nature of his conviction (D.E. 1 at 5; Ex. A to MSJ, D.E. 8-2 at 2).  *See also* Tex. Penal Code § 22.02 and Tex. Gov't Code § 508.149(a)(7).  Because Petitioner is not eligible for release to mandatory supervision, he does not have a liberty interest in earning or keeping good time credits and thus has failed to make out a claim that his due process rights have been violated.  Accordingly, summary judgment should be entered for Respondent.

**B.  Retaliation**

Petitioner also alleges that the disciplinary charge was brought against him in retaliation for his having complained about "One Captain Perze."  (Resp. to Mot. for Sum. Jmt., D.E. 11 at 2).  The bringing of disciplinary charges against an inmate, if motivated by retaliation for the exercise of a constitutionally protected right, is actionable, even if the charges, when brought for a different reason, might have been legitimate. *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995).  To make out a claim of retaliation a petitioner must allege (1) the exercise of a specific constitutional right; (2) the defendant's intent to retaliate for exercise of that right; (3) a retaliatory adverse act

---

[3] Currently located at Tex. Gov't Code Ann. § 508.001(5).

and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-325 (5th Cir. 1999).  In order to make out a claim of retaliation based on disciplinary proceedings, an inmate must be prepared to establish that but for the retaliatory motive, the filing of the disciplinary charges would not have happened. *Woods*, 60 F.3d at 1166.  Mere conclusory allegations of retaliation will not withstand a motion for summary judgment.  Instead, the inmate must produce direct evidence of a retaliatory motive, or allege a chronology of events from which retaliation can plausibly be inferred. *Id*.

Petitioner in this case has presented no evidence of a retaliatory motive and has not alleged a chronology of events from which retaliation could be inferred.  He has merely offered his conclusory assertion that his disciplinary conviction was the result of retaliation.  Accordingly it is recommended that his retaliation claim be denied.

## C.  Failure to Follow TDCJ-CID Policies and Procedures

Petitioner argues that the hearing officer did not follow TDCJ-CID procedures because he did not allow Petitioner to attend the hearing and also committed numerous other rule violations.  There is no evidence in the record that Petitioner was not allowed to attend the hearing.  By his own description of events he was told that he needed to wait his turn but became convinced that he would not be given a fair hearing and so left the hearing area.

To the extent the hearing officer might have violated a TDCJ-CID policy or procedure, it is well-established in the Fifth Circuit that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97

F.3d 91, 94 (5th Cir. 1996)(citations omitted).  Petitioner has failed to state a cause of action based on his allegation that TDCJ-CID officials failed to follow their own policies and summary judgment should be entered for Respondent.

**D.  Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. Daniel*, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional

claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In Petitioner's case, it is recommended that his cause of action be dismissed on the merits. If the district court orders that Petitioner's cause of action be dismissed and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find it debatable that petitioner failed to state a claim for violation of a constitutional right.

## RECOMMENDATION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (D.E. 8) be GRANTED. Petitioner's cause of action for habeas corpus relief should be DENIED. It is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted  this 20th day of April, 2015.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).